## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil No.** |
| | ) | |
| **TEXTRON INC. and** | ) | **COMPLAINT** |
| **WHITTAKER CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Plaintiff, the United States of America ("United States"), by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), by and through their undersigned attorneys, with respect to claims under federal law, alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action under Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607. The United States seeks injunctive relief requiring the defendants to perform certain response actions at the Nuclear Metals, Inc. Superfund Site in Concord, Massachusetts ("Site"). The United States also seeks to recover costs incurred and to be incurred in conducting actions in response to the release or threatened release of hazardous substances at or from the Site.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  The Court has in personam jurisdiction over the defendants.

3.      Venue is proper in this district under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the release and/or threatened release of hazardous substances that give rise to this complaint occurred in this district and because the Site is located in this district.

## DEFENDANTS

4.      Textron Inc. ("Textron" or "Defendant") is a corporation organized under the laws of Delaware with its corporate offices located in Providence, RI.

5.      Textron is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6.      Whittaker Corporation ("Whittaker" or "Defendant") is a corporation organized under the laws of Delaware with its corporate offices located in Simi Valley, CA.

7.      Whittaker is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY FRAMEWORK

8.      CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a), 9601(25).

9.      Under Section 104(a)(1) of CERCLA:

Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into

2

the environment of any pollutant or contaminant which may present an imminent and
substantial danger to the public health or welfare, the President is authorized to act,
consistent with the national contingency plan, to remove or arrange for the removal of,
and provide for remedial action relating to such hazardous substance, pollutant, or
contaminant at any time (including its removal from any contaminated natural resource),
or take any other response measure consistent with the national contingency plan which
the President deems necessary to protect the public health or welfare or the environment .
. . .

42 U.S.C. § 9604(a)(1).

10.      For CERCLA response actions and enforcement purposes, the Administrator of EPA is

the President's delegate, as provided in operative Executive Orders, and, within certain limits,

the Regional Administrators of EPA have been re-delegated this authority, which has been

further re-delegated to the Director of the Office of Site Remediation and Restoration.

## SITE BACKGROUND

11.      The Site is located at 2229 Main Street (Route 62) in Concord, Middlesex County,

Massachusetts, and surrounding areas where contamination has come to be located.  The 46-acre

2229 Main Street property is bordered by Main Street and commercial and residential properties

to the north; by woodland and residential properties to east and south; and by woodland and

commercial/industrial properties to the west.

12.      The Site was used by various operators at various times as a specialized research and

metal manufacturing facility, which was licensed to possess low-level radioactive substances.  At

various times, Site operators used depleted uranium, beryllium, titanium, zirconium, copper,

acids, solvents, and other substances at the Site.  From 1958 to 1985, Site operators disposed of

manufacturing by-products, including waste solutions containing depleted uranium mixed with

copper, spent acid, and lime, into an unlined holding basin located on-site.  Other areas of the

Site, including but not limited to the sphagnum bog, the cooling water recharge pond, septic

leaching fields, a sweepings pile, and the small landfill, are also believed to have been used for the disposal of manufacturing wastes.

13.     From 1958 to 1966, Textron, either directly or as a corporate successor, was an operator of the Site at the time of disposal of hazardous substances at the Site.  From March to September 1966, Textron was also an owner of the Site at the time of disposal of hazardous substances at the Site.

14.     From 1966 to 1972, Whittaker was an owner and operator of the Site at the time of disposal of hazardous substances at the Site.

15.     As authorized by Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 14, 2001, 66 Fed. Reg. 32235, 32241.

16.     The Defendants signed an Administrative Order by Consent for Remedial Investigation/Feasibility Study, CERCLA 01-2003-0021 (2003).  The Defendants started the study in 2003.

17.     In accordance with an Administrative Settlement Agreement and Order on Consent for Non-Time Critical Removal Action, CERCLA 01-2011-004, the Defendants, in August 2011, commenced a non-time critical removal action to demolish the buildings at the Site down to their slab foundation and place a temporary cap over the remaining slab foundation.

18.     The Defendants completed a Remedial Investigation Report in April 2014, and a Feasibility Study Report in November 2014.

19.     In accordance with Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the Feasibility Study and of the proposed plan for remedial action on October 31, 2014. EPA provided an opportunity for comments from the public on the proposed plan.

20.     The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 28, 2015, concerning which the Commonwealth of Massachusetts has given its concurrence. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

21.     A portion of the remedy selected in the ROD is being performed by the Defendants as a non-time-critical removal action for groundwater pursuant to an Administrative Settlement Agreement and Order on Consent for Non-Time-Critical Removal Action for Groundwater, CERCLA 01-2015-0008.

## FIRST CLAIM FOR RELIEF

Paragraphs 1 through 21 are realleged and incorporated herein by reference.

22.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section …
>      (2)  any person who at the time of disposal of any hazardous substance owned or operated any f acility at which such hazardous substances were disposed of, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for …
>      (A)  all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . . .

23.     The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

24.     Hazardous substances (including, but not limited to, depleted uranium, copper, nitric acid, polychlorinated biphenyls, trichloroethylene, trichloroethane, 1,4-dioxane), as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been released at the Site, and/or there is a threat of such release at the Site, as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

25.     The United States has incurred response costs for actions taken in response to the release or threat of release of hazardous substances with respect to the Site through the date of filing of this complaint.  The United States will continue to incur response costs in connection with the Site in the future.

26.     The United States' response actions taken with respect to the Site and the costs incurred related to those actions are not inconsistent with the National Contingency Plan, which was promulgated under Section 105(a) of CERCLA, 42 U.S.C. § 9605, and is codified at 40 C.F.R. Part 300 *et seq.*

27.     The Defendants are persons who were owners and operators at the time of disposal at the Site.  As such, Defendants are liable under Sections 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

28.     Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States with regard to the Site through the date of filing of this complaint.  The United States is also entitled to a declaratory judgment that the Defendants are liable for response costs that will be binding on any subsequent action or actions to recover further response costs to be incurred by the United States with respect to the Site.

### SECOND CLAIM FOR RELIEF

Paragraphs 1 through 21 are realleged and incorporated herein by reference.

29.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . secure such relief as may be necessary to abate such danger or threat . . . .

6

30.     The President, through his delegate, the Regional Administrator of EPA Region 1, has determined that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of a release of hazardous substances or a threatened release of hazardous substances at and from the Site.

31.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the United States to bring an action to secure such relief as may be necessary to abate a danger or threat at the Site.  In the Record of Decision, a determination was made of the response actions necessary to abate a danger or threat with respect to groundwater, soil, surface water, and sediment contamination at the Site.

32.     In accordance with Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Defendants are jointly and severally liable to perform the remedial actions identified in the ROD, which actions EPA has determined are necessary to abate a danger or threat with respect to groundwater, soil, surface water, and sediment contamination at the Site.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court:

1.  On the First Claim for Relief, enter judgment against the Defendants and in favor of the United States for all response costs incurred or to be incurred by the United States in connection with the Site, including enforcement costs and interest;

2.  On the First Claim for Relief, enter a declaratory judgment against the Defendants and in favor of the United States, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that the Defendants are liable for response costs, that will be binding on any subsequent action or actions to recover further response costs to be incurred by the United States with respect to the Site;

7

3.  On the Second Claim for Relief, enter judgment against the Defendants and in favor of the United States ordering the Defendants to perform response actions in order to abate the conditions at the Site;

4.  Award the United States its costs of this action; and

5.  Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division

/s/ C. A. Fiske_____
CATHERINE ADAMS FISKE
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
408 Atlantic Avenue – Suite 236
Boston, MA 20110
(617) 947-9157; addie.fiske@usdoj.gov

ANDREW E. LELLING
United States Attorney
District of Massachusetts

SUSAN POSWISTILO
Assistant United States Attorney
John J. Moakley U.S. Courthouse, Suite 9200
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

Of counsel:

SARAH MEEKS
Enforcement Counsel
U.S. Environmental Protection Agency
5 Post Office Square, Suite 100
Mail Code OES04-3
Boston, MA 02109

## <u>CERTIFICATE OF SERVICE</u>

According to Paragraph 121 of the accompanying proposed Consent Decree and the Defendants' respective Consent Decree signature pages, the Defendants have agreed to waive service by summons and the other formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure.

Accordingly, I, Catherine Adams Fiske, hereby certify that on this 9th day of October, 2019, the foregoing Complaint was served via email on:

Jamieson Schiff
Executive Counsel
Textron Inc.
40 Westminster Street
Providence, RI 02903
jschiff@textron.com

Eric G. Lardiere
President and Secretary
Whittaker Corporation
1955 N. Surveyor Avenue
Simi Valley, CA 93063
Eric.lardiere@meggitt.com

And as a courtesy on counsel for Defendant Whittaker Corporation:

Matthew Snell
Nutter, McLennen & Fish
155 Seaport Blvd,
Boston, MA 02210
MSnell@nutter.com